# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

NEAL CANNON III,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security

    Defendant.

CAUSE NO.: 4:16-CV-89-HAB

## OPINION AND ORDER

Plaintiff Neal Cannon III asserts that he is disabled due to his bipolar and panic disorders. He seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for disability insurance benefits and supplemental security income. Plaintiff argues that the Commissioner wrongfully denied him benefits and that the Administrative Law Judge (ALJ) erred by: (1) failing to give great weight to the opinion of a nurse practitioner who treated him; and (2) making a flawed subjective symptom assessment based on his daily activities.

Defendant argues that the ALJ reasonably weighed the nurse practitioner's opinion and assessed Plaintiff's subjective statements. Defendant asserts that the ALJ's decision should be affirmed because substantial evidence supports it.

## BACKGROUND

On February 26, 2013, Plaintiff filed applications for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. § 423(d), and for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3).

He alleged disability beginning January 1, 2011, which he amended to February 6, 2012, at the hearing because it aligned with the beginning of his sobriety. After a hearing on March 12, 2015, an ALJ issued a decision denying disability on April 13, 2015. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the Agency's final decision for purposes of judicial review. 20 C.F.R. § 404.981. Plaintiff sought review and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). The question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [his] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Although the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the ALJ commits an error of law, however, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

### A. The ALJ's Decision

Disability is defined as an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A)[1]. The claimant bears the burden of proving disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a). The claimant must establish that his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The ALJ conducted the familiar five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 6, 2012, the alleged onset date. At step two the ALJ found that Plaintiff had the severe impairment of bipolar disorder. At step three, the ALJ considered whether Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes substantial gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that neither Plaintiff's impairment, nor combination of impairments, met or medically equaled the severity of

---

[1] The Court will cite to the statutory and regulatory provisions for Disability Insurance Benefits without including the parallel statutory and regulatory provisions for Supplemental Security Income.

one of the listed impairments. With respect to Plaintiff's mental impairment, the ALJ considered his activities of daily living, social functioning, restriction in concentration, persistence, and pace, and that he had no episodes of decompensation. The ALJ also considered the "paragraph C" criteria and found that Plaintiff's medically documented history did not support a finding of disability.

For the fourth step, the ALJ determined Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the nonexertional limitations of only simple, routine tasks with occasional changes in a routine work setting and occasional interaction with the public, supervisors, and coworkers. (R. 23.)

Based on the above RFC, the ALJ found that Plaintiff was unable to perform any past relevant work, which was skilled and heavy. At step five, the ALJ relied upon a vocational expert's testimony to conclude that jobs existed in significant numbers in the national economy that Plaintiff could perform. Therefore, Plaintiff was not disabled.

**B.      Plaintiff's Arguments on Appeal**

Plaintiff identifies two errors in the ALJ's assessment. First, Plaintiff asserts that the ALJ improperly discredited the opinion of Plaintiff's treating nurse practitioner, Jennifer Jimenez. He maintains that her opinion should have been given at least great weight. Further, when the ALJ did not give her opinion controlling weight, he was required to consider all the regulatory factors when deciding what weight to afford it.

5

Plaintiff's second claim of error is that the ALJ incorrectly assumed that Plaintiff's limited daily activities meant that he could work eight-hour days, five days a week, on a sustained and continuous basis.

### 1. *Opinion of Nurse Practitioner Jimenez*

Sometime around October 2014, Jennifer Jimenez, FNP, BC, noted that she had been treating Plaintiff for the last three months. She stated they were working on a regimen that would help stabilize his mood and get his anxiety under control. She believed it was in his best interest at that time to refrain from working more than twenty hours per week due to his mental capacity. (R. 500.) She thought this could be reevaluated once he had made progress and some of his symptoms had abated.

On January 20, 2015, Jimenez provided a "Medical Statement concerning Bipolar Disorder." (R. 548.) Jimenez noted that she began treating Plaintiff on July 31, 2014. She diagnosed bipolar I, manic, moderate, and a panic disorder with agoraphobia. Jimenez noted Plaintiff's sleep disturbances, psychomotor agitation, difficulty concentrating or thinking, thoughts of suicide, paranoid thinking, hyperactivity, pressure of speech, flight of ideas, a decreased need for sleep, and distractibility. She indicated that he suffered from panic attacks that resulted in a complete inability to function independently outside the area of his home. (R. 548.)

Jimenez opined that Plaintiff had moderate to marked impairment in maintaining social functioning. He had deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere). He also had repeated episodes of deterioration or decompensation in work or work-like

settings which caused him to withdraw from the situation or experience exacerbation of signs and symptoms (which might include deterioration of adaptive functioning). (R. 549.)

According to Jimenez, Plaintiff was moderately impaired in his ability to remember locations and work-like procedures, understand and remember short and simple instructions, carry out short and simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and sustain an ordinary routine without special supervision (*Id.*)

He was also moderately impaired in his ability to make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and respond appropriately to changes in the work setting. (R. 550.)

Jimenez opined that Plaintiff was markedly impaired in his ability to understand, remember, and carry out detailed instructions, and maintain attention and concentration for extended periods. (R. 549.) Furthermore, he was markedly impaired in his ability to work in coordination with and proximity with others without being distracted by them, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 550). His impairments were likely to cause good days and bad

7

days and he would be absent from work due to his impairments an average of more than four days per month. (R. 551.)

Jimenez commented that Plaintiff suffered from extreme anxiety and some paranoia. His mood disorder could be severe and was progressive. He had exhibited signs and symptoms of mania with psychosis. He continued to suffer from extreme anxiety which prevented him from even getting his own groceries or engaging in meaningful relationships (*Id.*)

In his Decision, the ALJ stated that he was giving "[l]ittle weight" to Jimenez's letter wherein she stated that it was in his best interest to refrain from working more than twenty hours per week due to his mental capacity. (R. 26.) The ALJ noted that, although Jimenez had a treating relationship with Plaintiff, she was not an acceptable medical source under the governing regulations. In addition, the opinion did not include a "function-by-function analysis of the claimant's mental capabilities." (*Id.*) The ALJ also cited as reason for the assigned weight the inconsistency with Jimenez's treatment notes, which showed improvements with medication and counseling. (*Id.*)

Likewise, the ALJ assigned little weight to Jimenez's January 20, 2015, medical source statement where Jimenez opined that Plaintiff had panic attacks that resulted in his complete inability to function independently outside his home. (R. 26.) The ALJ found this opinion to be "completely unsubstantiated by the record where there is no such mention of severe panic attacks." (*Id.*) The ALJ noted Jimenez's opinion that Plaintiff had mild impairment in activities daily living, and moderate to marked limitations in maintaining social functioning. Jimenez had also checked the box for marked impairment

in the ability to work in coordination with and in proximity to others without being distracted by them, and the ability to get along with co-workers and peers without distracting them or exhibiting behavioral extremes.

Upon acknowledging Jimenez's opinions, the ALJ stated that her treatment notes did not indicate any problems interacting during follow up visits. Further, throughout the record, Plaintiff had been described as cooperative and pleasant. According to the ALJ, this would certainly not correspond to a marked limitation. Additionally, Plaintiff had a seasonal job after the onset date and he did not exhibit such problems during that employment. (*Id.*)

With respect to the marked limitations that Jimenez opined Plaintiff would have with understanding, remembering, and carrying out detailed instructions and with maintaining concentration and attention for extended periods, the ALJ stated it was not consistent with the mental status examinations that showed improvement in these areas with treatment. In fact, Plaintiff's more recent examinations showed his ability to concentrate was only "somewhat" or "slightly" impaired due to racing thoughts. (R. 25, 26, referring to Ex. 9F.) The ALJ noted Plaintiff's concentration for the duration of the hearing, recollecting that "he was able to participate in the hearing closely and fully without being distracted." (R. 22.) Further, "he was able to respond to questions in an appropriate manner and was alert and capable of following along." (*Id.*) This, along with other evidence in the record, showed that Plaintiff was not more than moderately impaired, and limited "with regard to concentration, persistence, or pace, corresponding to a limitation to simple, routine tasks with only occasional change in a routine work

9

setting." (*Id.*) The ALJ did not think the record substantiated Jimenez's statement that Plaintiff would miss more than four days per month due to his impairment or treatment.

The ALJ concluded as follows:

> Overall, Ms. Jimenez's opinion is given little weight, as it is not consistent with her treatment notes. For instance, on the medical source statement form, she indicated that the claimant's mood disorder can be severe and is progressive. However, her treatment notes show that his condition is improving with the correct use of medications. Also, she stated that the claimant can require hospitalization at times for the safety of self and others. However, there are no examples of hospitalizations since his alleged onset date. She stated that the claimant's extreme anxiety prevents him from even getting his own groceries or engaging in meaningful relationships, but the claimant himself stated that he is able to go to the store and he had been able to maintain a romantic relationship and live with others. Thus, this medical source statement is given little weight despite the treatment relationship.

(R. 27.)

In contrast to the ALJ's detailed and exhaustive explanation, Plaintiff's argument on appeal is perfunctory. He asserts that the ALJ discredited her opinion, in part, because she is not an acceptable medical source. He argues that evidence from sources that are not acceptable medical sources should be considered and, in some cases, may outweigh the opinion of an acceptable medical source. Plaintiff then asserts that this means "Jimenez's opinion should have been given at least great weight." (Opening Br. 14.)

This barebones argument does not highlight any of the pertinent factors that an ALJ considers when deciding how much weight to give to an opinion. These include (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the

10

opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (5) any other factors that tend to support or refute the opinion. SSR 06-03P, 2006 WL 2329939, at *4–5 (S.S.A. Aug. 9, 2006). Although Plaintiff later references these factors, he does so only to argue that the ALJ did not consider each one. That argument is not persuasive either—on its face or upon review of the ALJ's decision.

> Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

*Id.* at *5; *see also* 20 C.F.R. § 404.1527(f)(1).

As highlighted above, the ALJ weighed the evidence in the case as it related to Jimenez's opinions. The ALJ acknowledged Jimenez's treatment relationship and the nature of the treatment she provided but found that her opinions were unsupported by and inconsistent with the record as a whole, including her own treatment notes. He cited to Plaintiff's initial evaluation, as well as the notes from more recent appointments with Jimenez. The ALJ also considered evidence of Plaintiff's performance at his previous seasonal job and the lack of any mention of panic attacks that would result in a complete inability to function. In doing so, the ALJ met his burden "to explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow [his] reasoning." 20 C.F.R. § 404.1527(f)(2).

The Court finds no error in the ALJ's assessment of Jimenez's opinion evidence that requires remand.

## 2. *Daily Activities*

Plaintiff argues that the ALJ improperly equated Plaintiff's limited daily activities into full-time work. Plaintiff does not develop the argument or provide any detail about the activities that he believes the ALJ overemphasized.

What the ALJ said was that Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," and that they were "not indicative of a totally disabled individual." (R. 24.) Thus, rather than stating that the activities demonstrated an ability to sustain full time employment, the ALJ's assessment related to whether the activities supported a claim of total disability, as Plaintiff was alleging in his Disability Report and his testimony at the hearing. To this end, the ALJ discussed Plaintiff's typical daily activities, work activity after his alleged disability onset date that ended for reasons unrelated to his impairment, negative as well as positive results of mental status exams, the objective and clinical evidence of record, the type and effectiveness of his medications, including more recent instances of improvement with medication compliance, Plaintiff's treatment history since his alleged onset date, consisting of some counseling and medication management, and the medical opinions in the record.

An RFC must be "based on all the relevant evidence" in a claimant's case, including allegations of mental limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). To evaluate a claimant's subjective statements, an ALJ

12

must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96–7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996). The ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and "functional limitations." See 20 C.F.R. § 404.1529(c).

Here, the ALJ considered the pertinent factors and determined that, "while there is evidence that the claimant has some moderate issues with social functioning and concentration, persistence, or pace, there is no evidence that the claimant would be[] off task 20% of the time or have marked problems getting along with others, as put forth by the claimant's representative." (R. 25.) Consistent with the regulation, Plaintiff's daily activities were just one of the factors the ALJ considered in assessing Plaintiff's subjective complaints and determining what Plaintiff could do in a work setting despite his limitations. The ALJ built "an accurate and logical bridge from the evidence to [his] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001), and the decision is supported by "evidence a reasonable person would accept as adequate to support [it]," *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the Commissioner's decision.

SO ORDERED on July 2, 2019.

                                         s/ *Holly A. Brady*
                                         JUDGE HOLLY A. BRADY
                                         UNITED STATES DISTRICT COURT